Good morning. May it please the Court, my name is Brian Pastasensky and I represent the Countrywide Related Defendants. With the Court's permission, we would like to reserve four minutes for rebuttal. Mr. Kitchens, who represents numerous broker-dealers and underwriters in this case, will take a portion of the argument. This case concerns whether a 1933 Act case filed in state court in California should be removable under the Class Action Fairness Act. The 1933 Act regulates public offerings of securities. The securities in this case are several hundred billion dollars worth of mortgage pass-through certificates. They are an instrument that entitles the holder to interest and principal payments in underlying pools of mortgages. They are not traded on a national exchange. They were federally registered with the SEC and offered through registration statements and prospectuses. This case involves, and if I may, with the panel's permission, refer to the Class Action Fairness Act as CAFA. This action underlies or goes to the heart of CAFA's, one of CAFA's central purposes. Section 2 of the Act states that one of the Act's central purposes was to bring into the federal courts cases of national impact. And I would submit to you that this case, given the times we live in, given the hundreds of billions of dollars face value of the securities at stake, and given the national distribution of the plaintiff, of the proposed plaintiff class, this is quintessentially a case of national significance. Counsel, may I ask you, of the two statutes involved, which in your view is more specific? In this case, Your Honor, I would submit that the more specific of the two statutes is actually CAFA, as opposed to Section 22A, which is a portion of the 1933 Act, and also very relevant to the other major statute, the Securities Litigation Uniform Standards Act, which, again, with the panel's permission, I'll refer to as SLUSA. The reason I say that CAFA is the more specific is because it grants very broadly the power to remove a wide range of cases if they meet the minimal diversity requirements, the $5 million amount and controversy requirement. But then there are a series of six very carefully drawn exceptions. The first of those exceptions is an exception for class action cases, securities class action cases, that involve covered securities. Covered securities are in turn defined in SLUSA, elsewhere in the 1933 Act, to be securities that are traded on a national exchange. And so, in effect, what CAFA says, what Congress has explicitly said, is that if a securities case involves a covered security, the removability of that case is to be cited under SLUSA. If, as in a case like the one before this panel, the security is not a covered security because it is not traded on a national exchange, it is within the broad ambit of removability under CAFA. So the reason I say it's more specific is because what is left for removal under CAFA is a subset of the range of potential 1933 Act cases that would otherwise be caught by Section 22A, which was adopted in 1933 and contains a broad, on its face, as originally drafted, contained a broad non-removal prohibition. But doesn't your interpretation essentially nullify 22A? Not at all, Your Honor. Why not? And the reason I say that is because of the express delineation on the face of CAFA between securities class action cases that involve covered securities, that is still the ambit of SLUSA and that is still the ambit of 22A. There is nothing in CAFA that undermines that feature. And if anything, Your Honor, what I would say, and this is actually what the Second Circuit recently said just a few weeks ago in the estate of Pew decision, which we submitted when it came down. The Second Circuit, Your Honor, said that if you, if one reviews the SLUSA statute and 22A in juxtaposition to CAFA, what you see is a continuum. It is an intent by Congress that 1933 Act class action cases of national import be able to be litigated in the Federal Courts. And the way these statutes do it is complementary. 22A, which is still in the books and is not overridden and not abrogated by CAFA, basically says that if the 1933 Act involves a covered security, that is to say a security traded on a national exchange, and if the case is a covered class action, which SLUSA defines to be one involving at least 50 proposed class members and allegations of misstatement or omission, then that case is removable under SLUSA. Your opposing counsel distinguishes Pew on the basis that the securities holders there were not suing as holders. Do you disagree with their analysis of Pew? I don't know why. Your Honor, I think that distinction is not relevant to Pew. Pew dealt with the question very narrowly of the applicability of the exception in CAFA, which is to cases relating to security. And you don't believe that the nature of the plaintiffs in that case made a difference? I don't think it makes a difference, Your Honor. I think the words of the Second Circuit could not be clearer. And it really goes to the heart of what I think is a fundamental flaw in plaintiff's primary argument, and that is that Section 22A is an absolute bar to removal. It is not an absolute bar to removal. In fact, when SLUSA amended the language of 22A in 1998, it not only made 1933 Act cases involving covered securities and covered class actions removable, but there are three cases we cite in footnote 6 to our brief that say that, in fact, Congress did away with concurrent jurisdiction over those cases. Well, now, CAFA contains exceptions to removal. You've covered, we've talked about covered securities. It's not covered securities. That exception doesn't apply. Correct, Your Honor. This is not a lawsuit involving the internal governance of a corporation. That exception doesn't apply. Correct, Your Honor. That takes us to whether this lawsuit relates to the rights and duties and obligations relating to or created by a security, right? Your Honor, the plaintiff, the appellee argues that that exception, were this panel to reach it, would prevent removal in this case. Why are they wrong about that? They're wrong about it, Your Honor, because if that exception is read this way, then other portions of the exceptions are essentially rendered superfluous in violation of some very fundamental canons of statutory construction. To read that provision the way plaintiffs read it, you essentially have to read out all the language in it about relating to rights, obligations, and you essentially collapse it to mean relating to any security. And if that's, if that is how it is to be read, then the first exception dealing with cases involving covered securities would be unnecessary, because, of course, covered securities are securities, which is exactly what the Second Circuit in Pew and the district court, the magistrate judge in Shaft, which is another case we cite, held, that it would essentially render a nullity whole portions of CAFA, which clearly I don't think Congress intended to do. I think you have to read the exceptions so that they can coexist. But they did know about 22, of course. Why didn't they deal with that? I mean, that's a very, very specific statute. And since that time, Congress has, of course, carved out certain things. But sometimes they specifically state that, you know, that it doesn't apply. But here they don't talk about it. Why is that? Well, Your Honor, with all due respect, I would actually disagree with that. I think they do deal with it. I think that the exception with its explicit reference to covered securities is an acknowledgment that Congress absolutely knew about 22A, absolutely knew about SLUSA, and was essentially saying, and this is what I think this boils down to, if you've got a covered security, look to SLUSA. Look to SLUSA for removability. If you have a case like this one involving a non-covered security, one not traded on a national exchange, you can still have cases like this one involving far more than $5 million in controversy, involving purchasers of securities all across the country, where you have a case of national impact. And CAFA, acknowledging SLUSA in that exception, also says we want those cases of national significance in the federal court. If that's true, then why didn't Congress say you have to bring it in federal court and not just make it removable? Even under your view, you could still bring it in state court, right? You could bring it in state court, but I think that's... If no one removed it, it wouldn't be removed. It would stay in state court. If Congress really felt the way you say they feel about it, why didn't they just say there's no longer concurrent jurisdiction? It must be brought in federal court. And I think the answer to Your Honor's question is not every case involving non-covered securities is going to rise to the level of national impact. If this were a case, for instance, that involved... They didn't say that. They didn't say that. But what they did say, and this goes back to the core principle of Section 2, what they did say is nationally significant cases belong in the federal courts, and both CAFA and SLUSA, each in their own way, each in their own way. SLUSA with 50 plaintiffs and sort of a minimum number of securities that are traded on a national exchange, SLUSA or CAFA by a minimum dollar amount threshold, each is carving out a certain kind of significant case. The other cases, if brought in state court, will stay in state court. Counsel, I don't know whether you share Justice Scalia's view of legislative history, but let me read to you a little portion of the Senate history of this particular bill under CAFA. It says, The purpose of this provision is to avoid disturbing in any way the federal versus state court jurisdictional lines already drawn in the securities litigation class context by the enactment of SLUSA, basically. Your response to that? My response to that, Your Honor, is that there are other portions of the legislative history which tend to lead the other way from what the plaintiffs argue that interpretation should be. For instance, there's a whole passage about a very different case, a case involving restatements. It's the Enron case and how, if brought in state court, those cases would be removable under CAFA. Clearly, CAFA contemplates the removal of securities cases. And I would say that the exception, by carving out covered securities, CAFA, Congress did leave intact, did leave intact what had been set up in SLUSA. It's basically in a symmetrical complementary way saying if you've got a non-covered security, but nonetheless a case of national significance, we think there should be a federal forum. And the irony, Your Honor, the irony is that had the plaintiffs in this case brought this case under state law, they wouldn't be here arguing it weren't removable. To have made it under federal law and for that not to be something that this panel and the federal judiciary should be able to hear strikes me as completely nonsensical and completely ironic. You mentioned you wanted to reserve time for your colleague. Yes, Your Honor. Okay. Thank you. Thank you very much. Did you want to save it for rebuttal or? No, I just. You're going to use up your three minutes. You're welcome to. I'll proceed now if that's okay. Sure. If it may please the Court, I'm Dean Kitchens representing the defendant underwriters in the underlying class action which asserts claims under Section 11 of the 1933 Act. I am keeping my eye on the clock and I will be brief, but I wanted to just underscore that if the plaintiff's position were correct here, and I think Mr. Passagenski just kind of stole my line here, but I think that it's very important to remember that in this situation under CAFA, had the plaintiffs filed this case asserting only state law claims of misrepresentation or whatever they might have done, that case under CAFA would absolutely and plainly be removable, we'd be down litigating in the district court today, we wouldn't be here before Your Honors. Here, ironically, because the claim is one of violation of federal securities laws, they say no, that has to be litigated in state court. So their interpretation of this statutory scheme and their interpretation of what the Congress must have intended leads to the conclusion that in the event that the law is a state law issue, it's litigated in federal court, and if it's a federal law issue, it's litigated in state court. Now, I don't think that can be a rational interpretation of any congressional intention or scheme with respect to the Congress acts rationally. Well, I guess what I'm assuming is that in the event there's a conflict between these statutes, and there is, 22A says it shall not be removed, CAFA comes along 75 years later in the context of cases involving issues of national importance and says, if you meet these standards, then you may remove. Well, the problem we have, counselors, is in the Congress, it's the staff that writes the bills. And the senators and the Congress people almost never see them. They come in and they enact them, and some people don't know the right and the left, and they miss things. We're stuck with the problem of, in this case, I think, determining which is the more specific statute. Why isn't Section 22 the more specific statute in this case? I think it's not the more specific statute, because when the legislation came along 75 years later, in the context of a situation where the Congress believed that cases like this of national importance should be litigated in federal court and gave a very specific set of standards to it. Is that the controlling issue, whether it's a matter of national importance? I think that it has to meet the very specific criteria which are in the statute, which I think reflect judgment about what cases are of national importance. And, by the way, I think it probably doesn't need argument that these current mortgage-related issues are cases of national, involve cases of national importance. But you have in CAFA a very detailed scheme and a statement of treating these kinds of securities, which are, as Mr. Pasadensky said, not covered securities. These packaged pools of mortgages in which people have interests, in which are sold, federally regulated and underwritten and sold, but not on national exchanges and, therefore, not covered securities. So these kinds of securities, CAFA comes along and says, these are to be treated under this set of standards. And here's a whole detailed list of when you may litigate in federal court and when you are carved out and may not litigate in federal court. And we're not carved out. We involve these securities which are not covered securities and don't meet the other standards. And there's a very detailed list of criteria which are to be applied. Now, it doesn't go back and say, and, by the way, we hereby revoke or overturn or amend the 1933 Act, nor does it say that we save it in the sense that we are ensuring that it shall continue on. So it's somewhat gray, somewhat ambiguous. It's inconsistent. It's inconsistent. They cannot coexist. And so the question that I think that you're called upon to answer is, in the context of legislation adopted for a specific purpose 75 years later in which we meet all the standards for removal, whether it makes sense to fill that ambiguity gap by concluding that, no, no, federal cases better be litigated in state court. State cases can be litigated in federal court. I just don't think that's a rational interpretation. I would just ask one question. If that's the standard, why did Congress pass SLUSA? SLUSA they want to get things back to the state court in many instances? Well, I think they wanted to get things into the federal court when they passed SLUSA, and it has a set of criteria for the removal of claims relating to covered securities when they meet certain standards, and that was intended to fill gaps and ensure that there was federal jurisdiction over cases which met those standards. CAFA came along later and, in my judgment, complements SLUSA because it has coverage of those securities which are not covered securities. There's a lot of carve-outs and add-ins, but I think the two work together in that way. Thank you. Thank you. Okay. Thank you, Mr. Kitchin. Good morning, Your Honors. May it please the Court, Joseph Daley of the Coghlan-Stoyer Firm, with me is my partner, Tom Eggler. This morning I'm going to address why CAFA's general diversity-focused terms cannot trump the specific, narrow, non-removal terms of 1933 Act, specifically Section 22A. And I would, though, like to depart from my outline very quickly to address the general diversity-focused I think both counsel for the appellants mentioned how SLUSA is a way to get state law securities claims over to federal court to bring them under the penumbra of federal jurisdiction. That's not what happens. SLUSA removes a very narrow subset of 1933 Act-type cases into federal court, and then it preempts them. It gets rid of them. You're dismissed. So we would not have been brought into federal court and be litigating down in a district court somewhere had we brought state law claims. Had we brought state law claims, we would have been removed and dismissed. End of story. What we did was what Congress told us we could do back in 1933 and reaffirmed that we could do in 1998, which is we can bring pure 1933 Act claims in a state court. And those pure 1933 Act claims, provided they are not brought under state law, cannot be removed. And, I mean, there's a lot of talk up here about, you know, policy decisions and perhaps some, you know, unclear language, but let's go to some of the clear language. Let's go to the specific, narrow, clear language in the 1933 Act. I mean, opposing counsel talks about there not being a savings clause in CAFA. Well, there is sort of a savings clause in the 1933 Act. And that savings clause says, except as provided in Section 16C, no case arising under this title and brought in any state court of competent jurisdiction shall be removed. All right, let's flip to 16C. 16C starts talking about covered class actions. A covered class action brought in any state court involving a covered security, comma, as set forth in Subsection B. Well, when you flip to Subsection B, Subsection B talks about no covered class action based upon the statutory or common law of any state may be maintained in any state or federal court. It's a pure removal and preemption part of the federal securities laws that Congress specifically carved out and left the exception for the concurrent jurisdiction of 1933 Act claims like ours. And the Supreme Court said that that language in 22A is an example of the indisputable prohibition against removal. That's what that language is. We have indisputable. We have, pardon me, an absolute choice of forum. You don't find that in CAFA. You find a statute that this Court alone has described in two other cases, in the amalgamated bank case and in the abrigo case, as illogical. And these are the Court's words, not my own. Illogical, muddled, clumsy, and bewildering. I mean, even the Pew case to which they're hitching their wagon, even that case, the panel there, the 2-1 majority, admitted that CAFA, as written, parts of it are, pardon me, imperfect and cryptic. In fact, the Pew panel felt so constrained to reach what they thought was the correct example, I'm sorry, the correct result, that they couldn't, given this muddled, imperfect text, they actually had to ignore an entire phrase in CAFA, the relating to language that's already been discussed this morning. I mean, the Pew panel admitted that our decision today renders that part of the statute superfluous, but sorry, that's the way we're going. So from your perspective, the only place you could have filed this action would have been in State court had you done otherwise, you would have been dismissed under SLUSA. No, Judge Smith. Yes, we could have filed in Federal court. We could have filed this action in Federal court. Section 22A provides for concurrent jurisdiction. We could have filed in Federal or State court. The fact that it did not involve a State law-based claim allowed us to stay in State court. Now, given the language of the statute of CAFA, I mean, for sake of argument, I'm asserting that 22A, that the 1933 Act is the more specific. It is more specific. I mean, the passages I just read to you, you can't really get much more specific. Turning to CAFA, when you look at the legislative history there, Congress was concerned with a series of abuses that it laid out over four or five pages in that Senate report, abuses having to do with coupon settlements where consumers maybe got 50 cents off on their next movie rental where the lawyers took home $10 million. In those four or five pages of listed abuses, I would challenge this panel to find one example of a securities case. You won't find it. I've read and reread that Senate report. You will not find examples of abuses of plaintiff's attorneys having to do with securities laws. What you do find is Congress's very deliberate decision to move consumer class actions that are diversity-based or could be, should be diversity-based over into federal court. They were concerned about state court judges in outlying state courts around the country, foisting their view of what a law having to do with maybe a tort or, you know, product liability, what, let's say, Tennessee's idea of product liability law should be based upon a nationally certified class action. That's not going to happen. There's no danger of that happening here with these 33 Act claims. That same state court judge in Tennessee, while he or she may have wanted to apply Tennessee law to that product liability class action, they are bound to apply federal precedent to these 1933 Act claims. There's no difference in what a federal judge sitting here in the Central District of California and what a state court judge sitting in Tennessee will apply to these actions. Why is the state court a more preferable forum here? For one thing, where we brought these in California state court, I'm told there's a five-year time limit from filing the action to trial. A lot of these class actions, class actions involving millions if not billions of dollars, can take years and years to string out. We could get a faster result in state court. Is that what you're saying? We possibly could have. But I don't even have to necessarily justify that decision. No, you don't. I'm just trying to understand what the thinking would be. That's the one reason I'm told. That is one of the reasons I'm told. There may be others. But I did not litigate the case, so I don't know the strategy behind filing in the state court. But Congress says we can do that. And until Congress says we can't do that, until Congress, when they enacted CAFA, they were all over the U.S. Code amending bits and parts of it. They could have easily gone back to Section 22A and straightened out that language to provide for CAFA had they wanted to. Now, and I know the opposing counsels, at least their briefs, spend a lot of time on that Latin phrase, and I don't even know if I can say it. But we'll just call it the expressio unius phrase, okay? You know, the Supreme Court in the Ford case back in 1927 said that that canon of cacciatore Excuse me. I'm hungry. I haven't had breakfast. That canon of cacciatore interpretation, you know, it may be a useful servant, but it's also a very dangerous master. And I think the Supreme Court was saying very clearly, look, it may be an interpretive aid, but it's not an inviolate rule. And, you know, this talk about the exceptions in A, B, and C, four quick responses to that. The first one is we don't even need those exceptions. 22A says we don't need an exception. 22A is the more specific statute that says if you choose to bring a pure 1933 Act claim to state court, you get to stay there. Nobody can remove you. From your perspective, were the appellates to prevail in this action, what would happen to this lawsuit? I'm sure it would be moved back into the central district before Judge Falzer and proceed accordingly. So other than the jurisdiction, there would be no difference? Well, we can't say no harm, no foul, Your Honor, because, again, the name of the case is escaping me right now, but I believe the Supreme Court has said that that absolute choice of forum, if it's thwarted, that in itself, I don't know, I'm not sure if they use the word injury or that's improper, but that's our absolute choice of forum. So rather than speculate about whether we would be more aggrieved having to come back to federal court, I just don't know. I'm going by the plain language of the statute that says we could have brought it, we can bring it in state court, and that's what we did. I would also mention that, you know, sauce for the goose is sauce for the gander. They keep on talking about those exceptions and the fact that because they don't mention a specific type of securities claim, well, then, it must be included. Well, we have our own exception. We have that exception in Section 22A that I read to the panel when I first stepped up here. There is the exception that controls. And last, I might note that the CAFA Exception 9A, the first one that speaks of covered class actions, it's not just referring to class actions involving covered securities because they're on a national exchange. When you go through that part of SLUSA that it's referring to, it's clear they're talking about securities that are traded on a national exchange that are then brought in state court under state law. That's what CAFA Section 9A is addressing. They are addressing the SLUSA removal and preemption provision. The fact that they acknowledge that SLUSA can take some subset of securities class actions, bring them back into federal court, and then remove them, that doesn't make Section 9C superfluous. Section 9C is much broader. Section 9C talks about any security. The definition of securities is found in 1933 Act or 1934 Act, Section 2A2, I believe. It goes on for pages. And you'll find the certificates that are at issue in the underlying case here, they fall within that definition of a security. So I have no problem with that. Just a little bit about the Pew case because opposing counsel places so much weight on it. And I know our briefs say this, but I think it's worth repeating. The case is both inapposite and wrongly reasoned. It's inapposite because the Pew panel was not faced with a pure 1933 Act federal claim like we have here. They had a New York State consumer fraud statute. Of course they went down the road of analysis that they did. But even then, that road, they took some detours and they took some missteps on that road. They believed that CAFA and SLUSA worked together, quote, to assure that the federal courts are available, end quote, for securities cases. No, they don't. SLUSA makes sure that if you, when we bring you back into federal court, we're kicking you out the courthouse door. There's no enmeshed, you know, complementary relationship between the two. And as I mentioned earlier, I am repeating myself, but Pew concedes that they're skipping over the related to text. Our interpretation arguably renders the words relating to superfluous, but forced as we are to construe CAFA's cryptic text. Well, whatever the Second Circuit felt they could do over there, I'm sure this Court is not going to pick and choose among parts of a statute and say, well, this part, it's a little superfluous, it's a little cryptic, but we're just going to ignore it. No. The duty here today, I think everybody here would agree, would be first, is the text of the statute plain? The text of Section 22 is plain. The text of CAFA, it is not plain. If Congress wants to do what my opponents say that they meant to do in CAFA, well, Congress can very easily say that and can say it very plainly. But this Court is not the forum in which to try to correct Congress's imperfect drafting and enactment of a statute that's based at, concededly, diversity of jurisdiction, not securities cases. If Your Honors don't have any questions of me, I'm going to sit down before my time ends. I've never done that before. Thanks, Mr. Daley. Thank you. Thank you, gentlemen. The case is submitted at this time.
judges: Silverman, Rawlinson, Smith